[No. 15679. Department Two. July 9, 1920.]

## H. A. McVEETY, a Sole Trader Under the Name and Style of Machinery Supply Company, Respondent, v. S. E. HAYES et al., Appellants.[1]

SALES (29)—SUBJECT MATTER—PERSONALTY "APPERTAINING" TO A SAW-MILL. A bill of sale of a sawmill, buildings, engines, equipment and all other articles now on said premises "appertaining to said sawmill and logging outfit," includes the planking and ties with which cribs and ways were constructed, connecting with a loading platform at a railroad siding where the products of the mill were loaded.

PLEADING (61-64)—COUNTERCLAIM—NECESSITY OF PLEADING. In an action for the value of cribs and ways, consisting of ties and planking, converted by the defendant, in the absence of pleading and proof as to defendant's cost in dismantling the ways, defendant cannot claim an offset of such cost against the value of the material as shown by the price for which it was sold.

TROVER AND CONVERSION (36)—DAMAGES—AMOUNT FOR WHICH PROPERTY WAS SOLD. In an action for the conversion of lumber and materials, the value is sufficiently shown by the price for which the defendant sold it, and which was paid into court.

APPEAL (451)—REVIEW—HARMLESS ERROR—ADMISSION OF EVIDENCE. The admission of improper evidence is harmless, in an action tried before the court without a jury, and triable de novo on appeal.

Appeal from a judgment of the superior court for King county, Ronald, J., entered April 26, 1919, upon findings in favor of the plaintiff, in an action for conversion, tried to the court. Affirmed.

[1]Reported in 191 Pac. 401.

*Israel Nelson, Robert C. Saunders,* and *Arthur H. Hutchinson,* for appellants.

*Earl G. Rice* and *Gates & Helsell,* for respondent.

FULLERTON, J.—On March 25, 1918, and for some two years prior thereto, the appellants, Hayes, owned a sawmill located near Dent's Spur, a station or siding on the Chicago, Milwaukee & Puget Sound Railway Company's railroad in King county. The mill proper was some half of a mile back from the siding, and to connect it therewith, a water flume was constructed reaching from the mill to the siding. At the end of the flume at the siding, a platform some sixteen feet wide and thirty-two feet long was constructed parallel with a spur track at that place. The purpose of the flume was to carry the products of the mill to the siding. These, as they came from the saws of the mill, were thrown into the flume, whence they were carried by the water flowing therein to the platform mentioned. To increase the storage room at the platform, two runways were constructed. One of these was connected immediately with the platform, and extended back therefrom about one hundred and fifty feet in the direction of the mill. It was constructed by piling the ties in the form of cribs, after the manner of a log house, to the height of the platform and covering the same with planks laid lengthwise with the runway, the cribs being about six feet apart. The planks were held in place by nails driven through the outer tier of planks into the ties; the intermediate planks having no other fastenings. The other runway was of practically the same dimensions and was constructed in the same way. It, however, did not connect directly with the platform mentioned. An extension of the platform was made by piling ties in crib

form, but solidly outwardly from one of its ends for a distance of forty feet, and with this the runway connected. The runways were constructed shortly after the appellants purchased the mill, and were used in connection with the operations of the mill as long as it was operated by them. The ties used therein were in part hewn ties found on the premises at the time the appellants purchased the property, and in part by second class ties cut in the mill. The first of these had practically no commercial value, and the second very little at the time the runways were constructed.

On the date first mentioned, the appellants sold the mill property to the respondent. At that time the timber adjacent to the mill had become exhausted, and it was no longer profitable to operate it at that place. The respondent is a dealer in second-hand machinery, and the mill property was purchased by him for the purpose of being dismantled and sold as second-hand material. The sale was evidenced by a written bill of sale, the material parts of which follow:

"This Agreement made this 25th day of March, 1918, S. E. and M. C. Hayes doing business under the firm name and style of the S. E. Hayes Lumber Co., of Seattle, Wash., first party, and Machinery Supply Company, second party, of same place, Witnesseth:

"That for and in consideration of the sum of sixty-five hundred dollars ($6,500) in hand paid by second party to first party, receipt whereof by first party is hereby admitted, first party does hereby sell, assign, transfer and set over to second party all of the following described personal property, lying, being and situated at Dent's Spur, King county, Washington:

"One sawmill and buildings, donkey engines and all equipment including lines, blocks, tackles, etc., saws, boilers and all other articles of every nature whatsoever now on said premises and appertaining to said sawmill and logging outfit, hereby warranting title to said above described property."

Prior to the execution of the bill of sale, the appellants had taken up and had removed the ties forming the extension to the platform, but the runways, save as one of them was affected by the removal of the ties forming the extension, remained intact in the form in which they were originally constructed. After the sale and after the payment of the purchase price of the property, the appellants dismantled the runways and appropriated to their own use the planking forming the tops of the same and such of the ties forming the supports as they found had a commercial value.

This action was brought to recover the value of the property so appropriated. It was tried to the court sitting without a jury, and resulted in a judgment in favor of the respondent.

The ultimate question is whether these ways passed under the bill of sale. Turning to that instrument, it will be observed that its terms are comprehensive. After enumerating specifically certain of the properties sold, it concludes with a general designation, "and all other articles of every nature whatsoever now on said premises and appertaining to said sawmill and logging outfit." This clause of the contract, except as it is limited by the qualifying phrase, "appertaining to said sawmill and logging outfit," is broad enough to include all of the personal property on the mill premises, and these ways, since they are, under the conditions shown in the record, personal property, are included in the bill of sale, unless they are exempted by the qualifying phrase. The question then is, are they so exempted. It seems to us clear that they are not. Without attempting a general definition of the term "appertaining," it can be said that a thing appertains to another thing when it is constructed to be used in connection with that other

thing, and is used in connection therewith. It can hardly be doubted, we think, that these ways were so constructed and so' used. Their purpose was to provide a means by which the products of the mill could be stored and cared for while awaiting shipment, and that they were so used for practically the entire time the mill was operated by the appellants, the evidence is clear. When it is remembered that the ties were in part those on the premises when the appellants purchased the mill property, that the remainder were second class ties having then but little salable value, and that all were piled in the form of cribs, "after the manner of a log house," and not solidly as merchantable ties are usually piled for storage, and that no more were used than was necessary to furnish a foundation for the planking placed upon them, it is difficult to follow the appellants in their argument to the effect that temporary storage only was intended. Plainly, it seems to us, these ways as much appertained to the mill property as did the platform constructed on posts, the flume, and other like structures, which concededly passed by the bill of sale.

We have not overlooked the testimony of the appellants to the effect that the materials out of which the ways were constructed were inventoried in the account books of the appellant as merchantable materials, and were so regarded by them at all times as assets when taking accounts of the mill property. But this is hardly conclusive. Undoubtedly they had some value, and any correct system of bookkeeping would show them as having value. But the same thing can be said of the property which concededly passed to the respondent. This property was, or should have been, upon the books in the same manner, and if the fact argues in favor of exempting these ways from the

operation of the bill of sale, it argues in favor of ex-empting everything not specifically enumerated.

At the time the bill of sale was delivered and the purchase price paid, the respondent asked the appellants for a writing, directed to the watchman or keeper at the mill premises, showing his right to the mill property. In compliance with the request, the appellant in charge of the negotiations wrote and gave the appellant the following.

"Steve: It is O. K. to let the bearer remove anything they wish except the lumber platform or lumber trucks.               S. E. Hayes."

It is contended by the appellants that this is a contemporaneous construction of the terms of the bill of sale, and shows that it was not the intention of the parties that the lumber platform and ways were to be included therein. But it will be observed that it is the lumber platform only, not the ways, that are mentioned in the writing, and to construe it as explanatory of the bill of sale rather supports the respondent's construction of the instrument than it does the construction of the appellants. But the evidence makes clear the purpose of the writing. The appellants had in stacks by the side of the ways a considerable quantity of merchantable material which was not included in the bill of sale, and which the ways and platform furnished a convenient, if not a necessary means of carrying to the railroad for shipment. This fact furnished the reason for the reservation in the order; the appellants desired, and the respondent consented, that these instrumentalities should remain in place until the lumber was removed.

A further contention is that the recovery is too large, since no deduction was made for the cost of removing the ways and transporting the materials of

which they were composed to market. The evidence shows that the purchaser of the property, to whom it was sold by appellants, paid the freight thereon from Dent's Spur, the location of the ways, to the place of sale, and that the amount of the recovery was for the value of the materials less this freight. There was, however, no allowance for the expense of dismantling the ways and loading the materials on the cars. But no counterclaim was pleaded for this service and no evidence was offered tending to show the value of such services. Overlooking the fact that the appellants were wrongdoers in removing the materials and possibly could make no claim for the service for that reason, the absence of pleading and proof precludes the consideration of the question.

It is also said there was no proof of value. On the question the record shows that the purchaser of the materials paid into court the sum it was agreed between the purchaser and the appellants that the appellants had received for the materials, and that the court adopted this sum as the measure of the value of the materials. We think clearly that it was justified in so doing.

Finally, it is contended that the appellants are entitled to a reversal and a new trial because of the admission of irrelevant and incompetent evidence. But the cause was tried by the court sitting without a jury, and is triable in this court de novo. In such cases, as we have repeatedly held, the admission of improper testimony is not reversible error. The question in such cases is whether the competent evidence supports the judgment. In this instance we find that it does, ignoring all that the appellants deem inadmissible.

The judgment is affirmed.

HOLCOMB, C. J., MOUNT, TOLMAN, and BRIDGES, JJ., concur.